UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DISVISION

PRO SE PLAINTIFFS
FERNANDO GAUD, Disabled
Veteran, U.S. Army,
DARREN DIONE AQUINO,
Disabled Citizen,
CEO & National Chief Advocate
Disabled,
CANDIDATE FOR THE HOUSE,
DARREN DIONE AQUINO,
Disabled Nephew of Fernando Gaud,
ON BEHALF OF FERNANDO GAUD

Case No. 21-cv21-7tm 38,MRM

*EMERGENCY*
COMPLAINT FOR
INJUNCTIVE AND
DECLARATORY RELIEF

Plaintiffs,

V.

THE FEDERAL ELECTION COMMISSION (FEC),
employees, Supervisors, Managers, in their official capacity
CHERYL L. JOHNSON, in her official capacity
as the chief clerk of the U.S. House of Representatives
WILLAIM BARR, in his official capacity
as the Attorney General of the United States
RON DESANTIS, in his official capacity as Florida Governor,
LAUREL M. LEE, in her official capacity
as Florida Secretary of State,
JENNIFER L. EDWARDS, in her official capacity
As Collier County Supervisor of Elections,
MARIO DIAZ-BALART, in his official capacity as a U.S.
Representative for the 25th District of Florida
SCOTT s. HARRIS in his official capacity as the
Clerk of the Supreme Court of the United States,
THE RIVERDALE NURSING HOME and their employees in their
Official capacities,
SARAI , FINANCIAL OFFICER, RIVERDALE NURSING HOME
in her official capacity,
ERIC COHEN, ATTORNEY OF THE RIVERDALE NURSING HOME,
In her official capacity,
RUBEN, ADMINISTRATOR OF THE RIVERDALE NURSING HOME,
In his official capacity,
GOVERNOR ANDREW CUOMO,in his official capacity,
ANDREW SAUL, COMMISIONER OF THE U.S. SOCIAL

1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DISVISION

PRO SE PLAINTIFFS
FERNANDO GAUD, Disabled
Veteran, U.S. Army,
DARREN DIONE AQUINO,
Disabled Citizen,
CEO & National Chief Advocate
Disabled,                                     Case No ___ .
CANDIDATE FOR THE HOUSE,
DARREN DIONE AQUINO,
Disabled Nephew of Fernando Gaud,                    COMPLAINT FOR
ON BEHALF OF FERNANDO GAUD                            INJUNCTIVE AND
                                                     DECLARATORY RELIEF

                    Plaintiffs,


                        V.

THE FEDERAL ELECTION COMMISSION (FEC),
employees, Supervisors, Managers, in their official capacity
CHERYL L. JOHNSON, in her official capacity
as the chief clerk of the U.S. House of Representatives
WILLAIM BARR, in his official capacity
as the Attorney General of the United States
RON DESANTIS, in his official capacity as Florida Governor,
LAUREL M. LEE, in her official capacity
as Florida Secretary of State,
JENNIFER L. EDWARDS, in her official capacity
As Collier County Supervisor of Elections,
MARIO DIAZ-BALART, in his official capacity as a U.S.
Representative for the 25th District of Florida
SCOTT s. HARRIS in his official capacity as the
Clerk of the Supreme Court of the United States,
THE RIVERDALE NURSING HOME and their employees in their
Official capacities,
SARAI , FINANCIAL OFFICER, RIVERDALE NURSING HOME
in her official capacity,
ERIC COHEN, ATTORNEY OF THE RIVERDALE NURSING HOME.
In her official capacity,
RUBEN, ADMINISTRATOR OF THE RIVERDALE NURSING HOME,
In his official capacity,
GOVERNOR ANDREW CUOMO,in his official capacity,
ANDREW SAUL, COMMISIONER OF THE U.S. SOCIAL



1

SECURITY ADMINISTRATION, in his official capacity.
ROBERT WILKIE, THE SECRETARY OF VETERAN
AFFAIRS, in is official capacity

Defendants

Plaintiffs FERNANDO GAUD, disabled veteran, and prose plaintiff and DARREN DIONE AQUINO, disabled candidate, CEO of Advocates for Disabled Americans, Veterans, Police, Firemen & Families, aka Civil Right Activist for 35 years, since 1983, by and through file this Complaint Pro se for Injunctive and Declaratory Relief against Defendants; THE FEDERAL ELECTION COMMISSION (FEC),employees, Supervisors, Managers, in their official capacity, CHERYL L. JOHNSON, in her official capacity as the chief clerk of the U.S. House of Representatives, WILLAIM BARR, in his official capacity as the Attorney General of the United States, RON DESANTIS, in his official capacity as Florida Governor, LAUREL M. LEE, in her official capacity as Florida Secretary of State, JENNIFER L. EDWARDS, in her official capacity as Collier County Supervisor of Elections, MARIO DIAZ-BALART, in his official and unofficial capacity as a U.S. Representative for the 25th District of Florida,(unconstitutionally placed in 2020),SCOTT S. HARRIS in his official capacity as the Clerk of the Supreme Court of the United States, THE RIVERDALE NURSING HOME and their employees in their Official capacities, SARAI , FINANCIAL OFFICER, RIVERDALE NURSING HOME in her official capacity, ERIC COHEN, ATTORNEY OF THE RIVERDALE NURSING HOME, in his official capacity, RUBEN, ADMINISTRATOR OF THE RIVERDALE NURSING HOME, in his official capacity, ANDREW SAUL, COMMISIONER OF THE U.S. SOCIAL SECURITY ADMINISTRATION, in his official capacity, .ROBERT WILKIE, THE SECRETARY OF VETERAN AFFAIRS, in is official capacity.

## NATURE OF THE CASE

This complaint is being typed for the plaintiffs since they are unable to write the complaint

1.       The plaintiffs bring this case to the court under the liberal construction rule, as disabled pro se plaintiffs, in particular, the two pro se plaintiffs, Fernando Gaud, and Darren Dione Aquino, are entitled to all warranted accommodations to be afforded to plaintiffs with disabilities, protected under the 14th Amendment, Title II of the Americans with Disabilities Act, herein known as "The ADA". Plaintiffs bring this case to ensure that all eligible disabled Florida voters, like Fernando Gaud, and Darren Dione Aquino, and Darren Dione Aquino, candidate, have a fair and safe opportunity to exercise their right to vote in the August 18, 2020, primary (August Primary) without interference, and the November 3, 2020, general election.  For all deemed qualified individuals under the "ADA", which means, any individual with a disability that effects a major life activity, an alternate format must be provided for fair and equal access, under Title II, 28 U.S.C., part 35, of the regulations. The regulations are clear on what the entities, their employees, and the actions that must be taken to ensure equal access, to provide the necessary formatted and warranted accommodations, without any interference. Any attempt to deviate amounts to discrimination, a willful act to exclude a disabled citizen from their 1st Amendment right, which this court cannot allow. This rule exists since the 104th Congress recognized that people with an anomaly of disabilities have been disenfranchised by the United States, and the practices of every state and local municipality, by denying an alternate format. The states have recklessly and willfully refused to be in full compliance of the ADA, which is the reason for this case before this Honorable Court. The Court must on the constitutionality of this case, take action in the interest of people with disabilities being disenfranchised from the most fundamental right of all, voting. Plaintiffs will also be referring to case 4:20-cv-00236-MW-MJF, the argument missing from this particular case is the disenfranchisement of the disabled voter and  and the protection provided for this special class of citizen by the Americans with Disabilities Act , The jurisdiction of this court is invoked pursuant to the 14th Amendment of the Constitution under the Americans with Disabilities Act, Title II, section 504, Section 508 (The ADA) INDIVIDUALS WITH DISABILITES ACT-PL 101-

336, 101ST Congress enacted July 26, 1990, 42 U.S.C. 121101-213: 5 U.S.C. 301;
28 U.S.C. 1331 ,Section 509, 510; 42 U.S.C. 12186(b), The election count should be
nullified. The defendants excluded the right of disabled people to vote. For example,
just one class, the visually impaired, there are over 10 million, there is only one state,
Rhode Island, that provides the accommodation of braille ballots for their blind
citizens. The count for the Presidential and Congressional elections cannot be accurate.
Aquino has a right to access as a candidate, a format that is alternated.

2.      Plaintiffs will demonstrate that this body of government is lacking its service to the
disabled population. The disabled have an absolute and sovereign right to fully
participate in the voting process. We have the liberty in the United States, not to have
voting rights infringed upon during any election.  A warranted accommodation is a
duty to provide, so that disabled individuals, such as the plaintiffs, qualified
individuals, have the absolute sovereign right to participate. The duty of the provider
is to do just that- facilitate, accommodate, and warranted.

3.      Plaintiffs present the argument of New York because it plays a significant role in
this controversy. The presiding judge has the full power and authority to enforce the
constitutional rights of we the people, we are  seeking nothing more, nothing less, but,
to be heard in this forum, that the court  determine the effect of the impact that these
practices of "no access" had on the disabled community.  Plaintiffs will also refer to case
14-cv-05446,  4:20-cv-00236-MW-MJF,  and 4:16-CV-2331. Since I, plaintiff Aquino, am
disabled, and unable to appropriately articulate on paper, I will be referring to the 3
cases these practices of "no access" had on the disabled community.  Since I, plaintiff
Aquino, am disabled, and unable to appropriately articulate on paper, I will refer to
these 3 cases.I, Darren Dione Aquino, am a "qualified" disabled individual as per the
guidelines determined by the Americans with Disabilities Act.  As per the American
with Disabilities Act, in order for equal treatment to be upheld under Title II, the
disabled individual is entitled to accommodations. I have been diagnosed with
neurological and physical disabilities. Specifically, I have processing dyslexia, which
totally impedes my ability to complete forms, write and process thoughts and ideas in
an organized manner.  As such, I need the assistance of devices to help record my
thoughts in an orderly fashion, and further, I require note takers and transcribers to

4

document subject matter, briefs, statements, letters, and basically all forms of the written word. In addition, I suffer from a severe limp due to poliomyelitis from birth,I have a right deformed knee, as well as a club left foot. I also suffer from scoliosis, asthma, a partially occluded coronary artery, angina, and osteoarthritis. I am a qualified individual protected under the ADA.

4.      Plaintiffs civil rights have been infringed by states by government elected, and appointed employees of the state, local and federal governments. The reason for this action is to stop this practice, once and for all. It is the duty of every citizen to challenge the infringement that has been ongoing for decades, excluding people with disabilities disenfranchising them from an American way of life. Plaintiffs have met with great controversy, which is of national concern since disabled Americans make up a large group of protected individuals under the ADA. The disabled have not received those protections from the state, the venue is correct since the question before the court is the constitutionality of the infringement of people's rights.

5.      The court may also deem it appropriate to separate the New York case and give plaintiffs an opportunity to address it, since it surrounds this controversy. There has to be accountability and the liability caused by the defendants from New York, it must be heard. They restricted the activity of this honorable veteran, Gaud. He was mentally and physically affected. The Nursing Home in New York, committed Medicare fraud which plaintiffs will demonstrate and prove to the court, this affects the taxpayer. The court may want to hear and see the evidence, at which time the Honorable Judge may direct the Department of Justice, or the appropriate authorities to investigate in the interest of justice for all. Aquino and his uncle Gaud, are qualified individuals in need of many accommodations to get through this process. The first accommodation has begun allowing plaintiffs the liberal format, but it cannot stop there. This argument is compelling to say the least, Aquino is doing his best to describe the events as they took place, however, it may be in the interest of the court to expedite this case to appoint counsel. Aquino, in his official capacity, as the national chief advocate for disabled Americans, is also a witness, and the rules of the court allow him to be both the plaintiff and the witness in both capacities, as an advocate and as a candidate and a citizen but all of us, as Americans have a duty to protect the Constitution and this infringement.

Aquino hopes this complaint brings light and understanding to the court, and the action the court must take in the interest of justice for the American people. Many disabled lack the ability to even enter the court to testify as a witness because the disability is so severe, but it doesn't preclude them from the inherent protections of the Constitution. Plaintiffs believe when the court knows these facts, it will take immediate action on behalf of the disenfranchised group known as disabled citizens. The court will discover in the hearing, that these willful acts by the elected and appointed, who are responsible to uphold the Constitution, excluded disabled Americans from the voting practices of the United States, in particular, here, in the state of Florida. Defendants reside in Florida, with the exception for the New York defendants, who have caused imminent harm to plaintiff, Fernando Gaud, by keeping him from his true residence in Florida, against his will. Plaintiffs meet more than the threshold for 42 U.S.C. 1983 and 1988 requirements. Aquino, as a resident of the state of Florida, was entitled to nothing less than a full, fair and free election.

6.  The paramount argument of this claim is about accommodations, since without the accommodations there is no access, no access amounts to voter suppression, and the court must address it.. The right of access to vote was compromised to the disabled, making it impossible for their protected class to fully participate. This exclusive class, the disabled, are protected under the Constitution, known herein, as the Americans with Disabilities Act, (the ADA). The disabled are protected under the 14th Amendment of the Constitution since the life limitations they experience present a challenge with access to all fundamental rights within the United States. The purpose of the ADA was, and is to maintain independence for individuals with life limitations, seeing, standing, walking, talking, compromised cognitive abilities, mental and emotional limitations, etc.

7.  Plaintiffs were going to join the claim, 4:20-cv-00236-MW-MJF, however, found out the case has been dismissed. Plaintiffs would like to add that the only item missing from the dismissed case is identifying the disenfranchised group of protected citizens, again known herein, as people with disabilities, who have been disenfranchised from the voting practices by willful acts of State, Local and Federal employees, appointed, elected etc. The pandemic's impact is not limited to Floridians' health; it also

endangers their right to vote. The Plaintiffs submit to the court that the subject matter jurisdiction in this 42 U.S.C. 1983 and 1988 claim, includes but is not limited to, deliberate and willful acts against people with disabilities, to deliberately disenfranchise them from this freedom, to compromise and leverage the voting outcome.

8.    The DISABLED are a protected class, who have not been protected in this controversy. The controversy must acknowledge that the "class protected" citizens by the 14th Amendment of the Constitution, the Civil Rights Act of 1964, the Rehabilitations Act of 1974, and then again in 1990, the Americans with Disabilities Act, the most comprehensive act protecting people with disabilities, ready herein known as "We the People", now a protected class, have been excluded from fair and equal voting processes. The ADA was enacted to stop the disenfranchisement of disabled Americans from participating in the everyday activities enjoyed by all. The ADA distinguishes within the citizens, a group within a group, that cannot engage, enjoy, or participate, in this 1st Amendment freedom without a warranted accommodation. This is the duty and obligatory responsibility of State, local and Federal Government, appointed and elected officials as well. Appointed, elected officials and employees, have an absolute duty to uphold the rights of the citizens of every state, this has not been the case.

**JURISDICTION AND VENUE**

9.    Plaintiffs bring this action under 42 U.S.C. ss 1983 and 1988 to rederess the deprivation under the color of state law of rights secured by the United States Congress and by an Act of Congress.

10.    This Court has original jurisdiction over the subject matter of this action pursuant to 28. U.S.C. ss 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

**PARTIES**

11.    Disabled Pro se Plaintiff Darren Dione Aquino, is a U.S. citizen and a registered voter in Collier County. Aquino is a disabled pro se plaintiff and the CEO and founder of Advocates for Disabled Americans, Veterans, Police, Firemen & Families, a national

non-profit, advocating for, and defending the rights of disabled. Aquino was a Congressional candidate in District 19 Naples, Florida. Aquino started advocating for disabled in 1983, prior to the founding of the 101st Congress of the landmark law, the ADA. As a disabled candidate, and the National Chief Advocate for disabled nationwide, Aquino, was subjected to a lack of warranted accommodations for the disabled in the election and the voting process. The lack of accommodations for disabled voters, including himself, resulted in a violation of the plaintiff's 1st, 4th and 14th amendment rights. By virtue of the actions of the defendants, this case will demonstrate a pattern of practice against disabled by State, Local, and Federal governments, disenfranchising the disabled from the practices, policies and protections of the U.S. Constitution, as qualified citizens of the United States, We are the inherent gatekeepers. As a result of the acts of voter fraud and voter suppression, amongst other things, plaintiff has suffered monetary loss, physical detriment, and emotional duress. Plaintiff will demonstrate that the inalienable, sovereign rights that we possess as citizens, have been viciously and maliciously violated by the defendants mentioned herein. The protected class known as disabled Americans, also known as the "vulnerable" since COVID-19, effected by anomaly of disabilities, should be afforded the sovereign right, equalizing accommodations, protected under Titles I, II and III, full protection and enjoyment in a readily achievable setting, for a person with a qualifying disability acting pro se, exercising his 1st Amendment right, right of entry to orally express himself is protected under the 1st Amendment, followed by the guarantee of the 14th Amendment, Plaintiffs will demonstrate to the court that he did not get these protections afforded to him. The most powerful declaratory words of the United States Constitution is, "We the People," Pro se plaintiff will show that the lack of accommodation resulted in, financial loss. It is the duty of the court to recognize these constitutional infringements, and adverse actions against naturalized born citizens of the United States who have a sovereign right to participate in the voting practices, but not limited to voting practices, but also those practices that cannot be achieved without a readily achievable setting in place. This was mandated in 1990, under the Americans with Disabilities Act, Titles II, and not limited to Section 504 of the Rehabilitation's Act.

12.    The ongoing widespread discrimination practices is not limited to Florida, but is clearly demonstrated in New York, and Georgia. Rhode Island is the only state that makes limited braille ballot accommodations for the visually impaired population. The purpose of this complaint is to focus on the accommodations needed, that must be provided to the disabled, to disabled plaintiffs, for the enjoyment and enrichment of life, without barriers.

13.    The failure to provide mandated accommodations negatively impacted the congressional race for prose plaintiff, Darren Aquino, candidate for District 19, since the disabled votes were suppressed. The fact that these defendants all may deny, deprive, exclude willfully, an open forum, refuse blatantly to provide the necessary, and warranted accommodations, affected the outcome of the election for pro se plaintiff, Darren Dione Aquino, personally, as a disabled candidate and the National Chief Advocate for Disabled Americans. Plaintiff is known nationwide and on social media, as an advocate, had the most notoriety, during the Congressional campaign, however, the plaintiff's audience was compromised, (the disabled). The disabled could not freely vote due to a lack of accommodations. A mail-in ballot is not an accommodation for individuals that have disabilities that would keep them from using these ballots or understanding the use of the ballots effectively due to their limitations, be it visual or physical. Plaintiffs challenge absentee ballots, they are not accommodating since the practice deviates from independence, the practice basically requires that someone other than the disabled blind voter, physically challenged voter, the dyslexic voter, who cannot write or read appropriately, must have somebody else to help complete the absentee ballot, that is if that "somebody" is available. The owners of the accommodation/provision is that of the entity and the employee. The onus of accommodation is not that of the disabled individual.

14.    News media and social media reported that over 30,000 ballots were thrown out in the early primary in the State of Florida. This was reported on August 8, 2020, on all the news networks. Media outlets conducted a test to further explore the fraud being mentioned and found that there was a 3% fraud in reporting of absentee ballots. Absentee ballots are not an accommodation. This negatively impacted plaintiff Aquino's votes. He lost 30, 000 votes. If the ballot was mailed to a blind person, and it

was not in braille, that vote was lost. Mailed ballots sent during the primary included Congressional candidates names, plaintiff Aquino's name being first on the ballot, since the ballot is alphabetical. This alphabetical placement of being placed first on a ballot gives the candidate a 5% advantage. This 5% advantage has been a statistical finding for over 30 years. The only valid poll conducted, which was reported by both parties, had plaintiff Aquino at 18%. The winning candidate was at the lowest margin when this poll came out. In summation, it is fair to state, that plaintiff Aquino, would not be at 1.8%, which was the final count. The state of Florida has millions of New Yorkers that know Plaintiff Aquino, from New York, due to his civil rights advocacy and notoriety, and the fact that he is a 911 survivor All of these items contributed to his 18% rise in the poll. A doctor who voted for Aquino said, "people like you because you are not a professional politician, you are more of a patriot.

15.    Aquino was excluded from 3 forums/platforms since plaintiff Aquino was ahead and because he is from NY. Plaintiff's votes were suppressed the same way the President's votes were suppressed.  A Liberal newspaper, Paradise Progressive, Plaintiff Aquino was noted as a "mini Donald Trump."

Ms. Jennifer Edwards, Supervisor of Collier County Elections, openly stated at a Republican breakfast in confrontation with Plaintiff, Darren Dione Aquino, that she would not make the needed accommodations for the disabled, since the accommodations are too complicated. The mandate is clear, facilitate, accommodate, and warranted. Jennifer Edwards is not capable of serving as the Supervisor of Election, Collier County, and should be removed since refusal of a constitutional right is a treasonous act against the people she serves.

16.    Plaintiff's campaign was also hindered since he had covid-19. Plaintiff Aquino was sick for 8 weeks, although virtual campaign forums were held due to COVID-19, Plaintiff Aquino was excluded from several. Mr. Aquino was informed that Lee County is corrupt.

17.   On or about October 2019, disabled pro se Plaintiff, Darren Dione Aquino, contacted the Collier County Voter Registrar to obtain information on how to register to vote in his District and also expressed his interest in becoming a candidate in the 2020 U.S. Congressional election, specifically stating his intention to represent the District within which he resides. At the time, he resided within the Congressional District. The election officials advised Mr. Aquino of the necessary procedure for Federal candidates, which was to contact the Florida Department of State, Division of Elections in Tallahassee and the Federal Election Commission (FEC) in Washington D.C.. During this time while Aquino was exploring how to participate in these civic duties, to step up for GOD and country, he recognized that there were 1000 disabled, homeless, veterans and 2000 battered, single moms who were also suffering. Social conditions such as these are the responsibility of candidates. Francis Rooney and Mario Diaz Balart, have neglected these systemic problems that effect our society. We are not talking about anybody, but are talking about the elected who neglected the people. Mr. Aquino was asked to provide his address, which he did, in order to determine the District in which he resided, and was subsequently informed erroneously that he resided within the 19th District. Due to his disability, Mr. Aquino, requested the Rules and Regulations for Federal candidates be provided to him as alternate formatted materials, such as a tape recording, which would have facilitated and accommodated him as warranted under Federal mandate, which is title II of the ADA.. Failing to do this, prevented plaintiff Aquino from articulating a true and accurate response. Plaintiff Aquino had to assume what the regulations are, if not effectively communicated, plaintiff cannot effectively respond and operate.  In addition, Mr. Aquino, was referred to the Collier County, board of election and was also referred to the State and Federal Election Commission websites, all of which were inaccessible to disabled individuals "qualified" under the ADA (101.201). Mr. Aquino relied upon the information as provided to him by election officials as being true and accurate, as to the U.S. Congressional District in which he lived, and being unable to utilize the inaccessible websites of all three agencies himself for detailed instruction, as he was directed, he was unable to independently verify the information he had been given by the election officials, (which was the first barrier encountered)

11

as to the actual U.S. Congressional District within which he lived, that being the 25th U.S. Congressional District. Mr. Aquino was wrongfully placed in District 19 as a Congressional candidate, when plaintiff should have been placed in the 25th District as per his residence. The Board of Election placed Plaintiff Aquino, in the 19th District, alleging that it was the only seat open within the plaintiff's residency. The BOE failed to report that Mario Diaz Balart's seat was up for election., the candidate in District 25, had no election. They failed to place Mr. Diaz Balart on a ballot. They deprived everyone the chance to oppose him. There was no primary in District 25 or an election. Aquino was placed in the wrong district willfully. Mr. Aquino did not realize that he had been misinformed by election officials, whose duty it was, once given Aquino's home address, the correct information regarding the District within which he lived.

18.     On the date of the Florida primary, while voting, Mr. Aquino realized his ballot contained no U.S. Congressional race. If the plaintiff is not given a rule which has been effectively communicated, it would be fair to say that no rule was provided. The citizen, the individual or the candidate would be led to believe that it would nullify a given rule, since it wasn't provided in the format needed. One of the best examples of an egregious affront to a disabled individual is the case of Tennessee v. Lane. Mr. George Lane was made to crawl up the stairs of a Tennessee courthouse, when he refused to crawl up the stairs, a warrant was issued. Mr. Lane filed a complaint in Federal Court and won the case, making it a landmark decision regarding warranted accommodations for the disabled. No disabled individual should be  demeaned for needing equal access. The ADA mandates equal access, and the access begins with an accommodation of the warranted need based on disability. Mr. Aquino was wrongfully placed in District 19 as a Congressional candidate, when plaintiff should have been placed in the 25th District as per his residence. The Board of Election placed Plaintiff Aquino, in the 19th District, alleging that it was the only seat open within the plaintiff's residency. The BOE failed to report that Mario Diaz Balart's seat was up for election.  District 25, had no election. They failed to place Mr. Diaz Balart on a ballot.  They deprived everyone the chance to oppose Diaz Balart. There was no primary in District 25 or an election

12

**Article 1, Section 2**

The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature. No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen. Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to choose three, Massachusetts eight, Rhode-Island and Providence Plantations one, Connecticut five, New-York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three. When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies. The House of Representatives shall choose their Speaker and other Officers; and shall have the sole Power of Impeachment.

Aquino was placed in the wrong district willfully. These defendants have one thing in common, they all violated the Constitutional rights of the disabled citizens of the states mentioned.

19.     Pro se Plaintiff, Fernando Gaud, is a disabled veteran. He is a U.S, citizen. Plaintiff Gaud is the uncle of Plaintiff Aquino. He is registered as a voter in Florida where his family and he now reside. Plaintiff Gaud was kept against his will in a nursing home, The Riverdale Nursing Home, in the Bronx, New York, from 2017 to October of 2020. When plaintiff Aquino attempted to get Gaud discharged from the nursing home, he

was informed by the nursing home administrator, that Gaud had a new proxy, a non-family member, appointed by the nursing home, since Gaud was mentally incapable of making his own decisions. Aquino was listed as Gaud's guardian and next of, kin and although the nursing home had this information, they waited close to 18 months to notify Aquino, his nephew, that he was a patient in this home. During this period of time, Aquino continued looking for his uncle. Every attempt Aquino made to have his uncle discharged was rejected. This battle continued for more than a year, until the nursing home finally discharged Gaud in October of 2020. While at the nursing home, Gaud was over medicated, he received sub-standard healthcare, i.e., became obese, his dental needs were neglected, he had surgery due to an infection he contracted at the nursing home, on his testes. One of his testicles was removed and his family, Aquino, was not informed. Governor Cuomo has been named in his official capacity since he has a duty and responsibility to enforce state regulatory guidelines which ensure that healthcare organizations such as nursing homes, are operating within given guidelines, that the patients, all of whom are vulnerable, are cared for appropriately. The facility committed Medicare and Medicaid fraud, whereby, Gaud was only given $20.00 (twenty) every six weeks. This is all Gaud was given from his social security check and his Veterans Benefits. Plaintiff Aquino also has bills form the nursing home for services that were not rendered, fraudulent billing, whereby, the bill documents a psychiatrist saw Gaud, every day for a 20 minutes, however, the dates listed, were dates when Gaud was in the hospital for the infection in his testes. When released to his nephew Aquino, in October, because Riverdale Nursing Home had new owners, Gaud had on a ripped pair of sneakers, dirty pants and an old sweatshirt. Gaud's hygiene, the nails of both his hands and his feet had not been trimmed for a very long time. Aquino reached out to the office of the Governor on many occasions for assistance and no one returned the calls. Although Gaud does suffer from a mental effect, he is fully aware of what goes on around him and when he was picked up by his nephew, one of the first things he told his nephew was that he is out of prison, that he felt like a prisoner, kept telling the staff that he wanted to go home and that he was not offered a chance to vote. Aquino communicated with both the Administrator, Ruben, and Sarai, the financial director of the Nursing home, and they both agreed that Gaud should have received his full social

14

security benefit in October of 2020, since he was discharged. Upon Gaud's discharge, Aquino requested his medical and financial records, none of which were available, upon discharge. Both Sarai and Ruben stated that they were new and that Citadel Care Centers had taken over the Riverdale Nursing in September of 2020, and that they were not responsible, although Sarai did mention that she would try to obtain some of Gaud's social security funds for him. She did not. The State of New York plays a significant role with Fernando Gaud. He was denied his constitutional rights, he was held captive, no one protected this disabled veteran. Gaud would have been a resident of Florida in 2019, had the nursing home discharged him to his family. Once Aquino brought his uncle home to Naples, he registered him with the Naples VA clinic, where they immediately reduced his medication. Gaud voted in Florida on November 3, 2020. Gaud brought his VA card and his lease as forms of ID and proof of residence. Gaud was later informed via letter from the Supervisor of Elections that his vote could not be counted. The fact that Gaud was held captive and was not allowed to leave NYS, effected the outcome of his vote. Gaud does have a mental effect, which is regulated with the correct dosage of medication, which was readjusted at the Naples VA Clinic. The court may see his medical in camera. The defendant, Governor Andrew Cuomo, willfully neglected the needs of the people in New York, he placed Covid infected individuals into Nursing homes of vulnerable individuals, causing the illness and death of the vulnerable. This should be punishable by civil penalties and imprisonment. Plaintiff Darren Aquino, as the National Chief Advocate for Disabled, makes this statement in his official capacity. Discrimination by elected, appointed, officials in the states, the counties and the united states, demonstrate an action so heinous, it calls for their dismissal. "WE THE PEOPLE ARE THE RIGHTFUL MASTERS OF BOTH CONGRESS AND THE COURTS, NOT TO OVERTHROW THE CONSTITUTION, BUT TO OVERTHROW THE MEN WHO WOULD PERVERT THE CONSTITUTION"-ABRAHAM LINCOLN

20.    There are 150 million disabled individuals in the United States, the lack of the disabled vote due to a lack of warranted accommodations have not only affected the Presidential election, but, all elections in our country.

## **CLAIMS FOR RELIEF**

21. Plaintiffs request that the court subpoena witnesses due to their work schedules.

22. Plaintiffs request that at least three defendants be present, who could also provide the formatted materials provided for disabled, not limited to braille ballots, but other forms of warranted accommodations, such as tape recordings, notetakers, and assisted auxiliary aids provided to the disabled community for the fair, free, and equal inclusion of the voting practices here in the state of Florida, as this is a national right, protected under the Constitution of the United States. This court has full subject matter jurisdiction in the interest of the people and to uphold this right. The three defendants will support the claim for injunctive relief since they will show that there were no accommodations; their responses will show that they were not complaint.

23. Plaintiff Aquino paid the full qualifying fee of $ 10,400,(ten thousand four hundred) and was entitled to a free and fair election, based on compliance and access. There was non-compliance which should effectuate the immediate return, of the qualifying fee. Not only was Aquino not provided an accommodation, but his voters, the disabled were not accommodated, hence the votes this candidate received were skewed.

24. Plaintiffs request that the court allow disabled plaintiffs to articulate before the court in the form of ability that is necessary for the plaintiffs, oral argument is being requested by plaintiff Aquino. Plaintiffs request that counsel be appointed for disabled veteran Fernando Gaud, because of the complexities involved in this fundamental infringement by state entities mentioned herein. It is the duty of the presiding Judge to uphold the Constitution for disabled citizens.

25. The vote by the electoral college is small and should be nullified. The congressional race here in the state of Florida, is null and void and should be recognized now and adjudicated now because it excluded thousands of disabled Americans from this practice to choose the candidate of their choice.

26. Aquino would like to reaffirm to the court his request to proceed orally until which time the court, depending upon the magnitude, which Aquino believes to be a great disenfranchisement of his constitutional rights, as a disabled citizen, appoints counsel

16

to further bring the details to this court, this is a national concern. The statements are not alleged, they are fact, there are no braille ballots in Florida.

27.     The court should be mindful that if time restraints are given without an accommodation, they would have to be nullified as well, without a verification of knowing the ability of the disabled, time should not be an issue in this controversy. There is a wide spread systemic problem of states providing accommodations, hence Tennessee v. Lane, states can be sued.   Pro se plaintiffs could not obtain any materials formatted under Title II accommodations. Plaintiff Aquino, under the regulations and guidelines, to seek an accommodation, it must follow chain of command, Plaintiff is well aware when it comes to the court, the court is not readily achievable except upon entry. To provide Aquino with due process, would require an accommodation to preserve his constitutional rights. Since formatting is an issue for an individual with disability, for example, dyslexia, the court in New York, would allow Aquino to deal with the Chief ALJ, Judge Gorman, since who allowed Aquino oral expression. We hope and pray that the court recognizes this 1st and 6th amendment right and protects his right and sees him through and puts in place equal protection under the law. There is limited access to this court house, hence the reason that the Clerk of the Supreme court being a defendant. No citizen with a disability can have their day in court without an accommodation. 50% of our country is disabled. The liberty ( 4th amendment) to have due process is compromised and hence suppresses my 1st amendment without an accommodation.

28.     Remedies for Gaud, would include appointment of counsel since he suffered eminent harm in New York. Because of the Long Arm of the Law, he has a claim. He was held from going home to Florida, his health and well-being were compromised, his vote was nullified.

29.     Plaintiff Aquino lacks the ability to articulate on paper due to his dyslexia. Plaintiff is best skilled in oral argument.

30.     Claims for relief will be further addressed in court, after which time, the court determines, the method in which plaintiffs will proceed via accommodations. Plaintiffs will outline further relief sought, i.e., financial reimbursements and physical modifications and alterations to the election and procedural practices that have not yet

17

been put in place to make the practices readily achievable and compliant to the ADA, which is the reason for this case. 100 million disabled were excluded from the voting practice. **U.S. Constitution Amendment I & XIV, 42 U.S.C. s 1983**

31. Congressman Mario Diaz Balart did not have a Congressional election in the 25th district of Florida. He did not participate in an election required under the Constitution for Congressional candidates. The state has no authority overruling the United States Constitution. Balart and criminal behavior, acts of collusion by a seated Congressman. It is his duty to uphold the Constitutional rights of citizens within his district. He should not be allowed to return as a Congressman in the 25th District since an election was not held.

On January 17, 2017, the Department entered into a memorandum of understanding with the Palm Beach County Supervisor of Elections regarding accessible voting systems under the Help America Vote Act and Title II of the Americans with Disabilities Act. Title II of the ADA is the absolute power of people with disabilities, since states fail to accommodate. Title II clearly states that the format must be alternated. The Constitution is clear in what must be done, it surpasses all other questions.

## TITLE II OF THE CIVIL RIGHTS ACT (PUBLIC ACCOMMODATIONS)

**42 U.S.C. §2000a** (a)All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin.

**42 U.S.C. §2000a(b)** Each of the following establishments is a place of public accommodation within this title if its operations affect commerce, or if discrimination or segregation by it is supported by State action: (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence. (2)

18

any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment, or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment and (B) which holds itself out as serving patrons of any such covered establishment.

**42 U.S.C. § 2000a(c)** (c) The operations of an establishment affect commerce within the meaning of this title if (1) it is one of the establishments described in paragraph (1) of subsection (b); (2) in the case of an establishment described in paragraph (2) of subsection (b), it serves or offers to serve interstate travelers or a substantial portion of the food which it serves or gasoline or other products which it sells, has moved in commerce; (3) in the case of an establishment described in paragraph (3) of subsection (b), it customarily presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce, and (4) in the case of an establishment described in paragraph (4) of subsection (b), it is physically located within the premises of, or there is physically located within its premises, an establishment the operations of which affect commerce within the meaning of this subsection. For purposes of this section, "commerce" means travel, trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia and any State, or between any foreign country or any territory or possession and any state or the District of Columbia, or between points in the same State but through any other State or the District of Columbia or a foreign country.

**42 U.S.C. § 2000a(e)** The provisions of this title shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b).

19

**42 U.S.C. § 2000a-6(a)** Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this title, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

**42 U.S.C. § 2000a-6(b)** * * * It shall be the duty of the judge designated pursuant to this section to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited.

In Closing, my freedom comes with an accommodation.

Fernando Gaud, Pro se disabled veteran

Darren Dione Aquino, disabled prose plaintiff

Darren Dione Aquino, Candidate for Congress

20

**Fernando Fred Gaud, disabled veteran**

**(same address and phone number as below)**

**Darren Dione Aquino**

**8688 Addison Place Circle**

**Apt 406**

**Naples, FL 34119**

**(239) 331-2451**

**Aquino4congress@gmail.com**

**(restricted access, public figure)**